MARY J. STERLING, executrix,

*v.*

GERMAN-AMERICAN INSURANCE COMPANY.

[Decided March 4th, 1905.]

In a suit to set aside an award by appraisers, to whom the question of damage by fire was submitted, where a witness for complainant estimated the cost of new buildings at $2,890, while the appraisers fixed it at $2,750, the difference was not sufficiently radical to show that plaintiff was injured by the award, or to justify the court in setting it aside because the complainant was not notified that the appraisers intended to meet and estimate the damages.

---

On bill. On final hearing.

*Mr. Linton Satterthwait,* for the complainant.

*Mr. James Buchanan,* for the defendant.

BERGEN, V. C.

The complainant, having suffered a loss by fire, submitted the question of damage resulting therefrom to appraisers, according to one of the conditions of the policy of indemnity issued by the defendant to her. The appraisers awarded to the complainant $1,800 as compensation for her loss, and this amount was arrived at by ascertaining the costs of reproducing new buildings and foundations similar to those injured, and deducting therefrom the value of the foundations, which were not destroyed or appreciably injured, and also an allowance for depreciation resulting from age. The principal building destroyed was a barn, the first story of which was built of stone. The upper story was a frame building, and naturally depreciated in value during the fifty years since its erection, notwithstanding usual and necessary repairs. A witness produced by the complainant, being a carpenter from the neighborhood, estimated the cost of new buildings at $2,890, while the appraisers fixed it at $2,750, a difference in estimates not sufficiently radical to warrant the assumption that the appraisers were actuated by any improper motives. The stone wall was standing and its condition subject to the view of the appraisers, who are not charged with being either incompetent or dishonest, and the allowance made by them for the stone wall, constituting the first story, together with that for depreciation, cannot be said to be so excessive as to justify the inference that the appraisers acted upon an erroneous principle or made any such mistake as to call for a review of their judgment. I have considered this branch of the case only upon the theory suggested by counsel when the evidence was offered, viz., that in order to have the benefit of the allegation that the complainant had no notice of the meeting of the appraisers, which is the potent factor upon which the complainant relies, it was necessary to show that she had been injured by the award, or that such a doubt as to the accuracy of

the conclusion had been raised as to justify the court in setting aside the award because the complainant was not notified that the appraisers intended to meet and estimate the damages.

It has been held in this court that similar proceedings under like policies were not ordinary arbitrations, but only an appraisal and ascertainment of the amount of loss, *American Central Insurance Co.* v. *Landau, 62 N. J. Eq.* (*17 Dick.*) *73*, and that the necessity of notice to the parties of the time and place of the meeting of the appraisers depends upon the circumstances surrounding each case, and whether the insured has already furnished all necessary information, or whether he has requested that he be present to make any additional explanation or to hear what may be said by others. *Stout* v. *Phœnix Assurance Co., 65 N. J. Eq.* (*20 Dick.*) *566.* In the latter case the relief here sought, the setting aside of the award, was granted for want of notice of the meeting, but that determination was reached because the court found that "neither of the appraisers had seen the personal property destroyed nor, except casually, the dwelling itself. All information respecting the personalty was derived from the list contained in the proof of loss, and all information concerning the real estate from the description contained in the policy. The appraisers had no knowledge of the age or condition of either. No effort was made to ascertain their original cost or to what extent the property had depreciated by time or use."

Turning to the case we are now considering, it appears that Mr. Kirkbride, the appraiser selected by the complainant, was her neighbor, living on an adjoining farm, and had resided there for at least twenty years, on which were located buildings similar, if not identical, with those partially destroyed. It appears that he had often visited the buildings on complainant's farm, and was quite familiar with their size, construction and condition, and, as a witness, impressed me as being a person of more than ordinary intelligence and well qualified to perform the duty cast upon him by the complainant in her selection. The appraiser selected by the defendant was a carpenter and builder of many years' experience, in consequence of which he had been repeatedly called upon to act as an appraiser in similar cases.

The testimony shows that two or three days before the appraisement was made, Mr. Kirkbride and the complainant met and had some conversation with reference to the time when the appraisers would meet. These parties do not agree exactly as to what took place, but I am satisfied from the evidence that Mr. Kirkbride, in reply to a question put by the complainant, told her that it was not necessary that she should be present, and that he did not then know when they would meet, but before the complainant left, Mr. Kirkbride had ascertained the date, and told the complainant that they would meet the following Monday. This the complainant denies, but it appears that she was on the ground at the time appointed; she gives as a reason for her being there that she went from Trenton to the property, which was located in Bucks county, Pennsylvania, on that day to attend to the putting in of a pump. It does not appear in this case that she took any steps to carry out the alleged object of her visit, and I am not disposed to give much credit to this statement. I believe she went there because Mr. Kirkbride had told her of the proposed meeting. However, whatever the reason may be, she was there and called the attention of the appraisers, while they were measuring the foundation to ascertain the size of the building, to certain elements of loss which she apparently thought they would overlook, and expressed no dissatisfaction with their proceeding at that time.

The circumstances which influenced Vice-Chancellor Reed in the case last cited are not present here. The appraiser, Mr. Kirkbride, had full knowledge of the age and condition of the buildings, which he communicated to the other appraiser. The complainant was present with the opportunity to make any additional explanation she desired, and these appraisers did ascertain the cost of the building and the extent the property had depreciated by time and use.

I am not convinced that this complainant is entitled to have this award vacated for the reasons set forth in the bill of complaint, because I am satisfied from the evidence that she had notice that the appraisers would meet at the time and place when they did meet, in pursuance of which she attended, and that she acquired this notice a sufficient length of time before

their meeting to notify her counsel to be present if she desired it, her residence in Trenton being, at the most, three or four blocks from the office of her counsel, and I am of opinion that she relied more upon Mr. Kirkbride, her friend and neighbor, to look after her interest in the matter of appraisement than she did upon her counsel.

The conclusions I have reached lead to a dismissal of this bill, and I will so advise.